Daniel N. GLAUDE, by Debra M. STE-
PHENSON, Guardian of Person
and Estate, Plaintiff,

v.

ROYAL INDEMNITY COMPANY,
Defendant.

C.A. No. 96–094L.

United States District Court,
D. Rhode Island.

Dec. 5, 1996.

Charles H. McLauhlin, Providence, RI, for plaintiff.

Paul V. Curcio, Maria J. Goncalves, Adler Pollock & Sheehan, Providence, RI, for defendant.

*MEMORANDUM AND ORDER*

LAGUEUX, Chief Judge.

This matter is before the Court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. At issue is whether an automobile insurance policy issued by Royal Indemnity Company ("Royal") provides uninsured motorist coverage to plaintiff Daniel N. Glaude ("Glaude") for injuries sustained in an automobile accident on January 29, 1995. For the reasons that follow, Glaude's motion for summary judgment is denied, and Royal's motion for summary judgment is granted.

## I. Background

The tragic facts of this case are undisputed. On January 29, 1995, Glaude was a passenger in a 1993 Pontiac Bonneville driven by his wife, Michele Glaude. While traveling on Arnold Street in Wrentham, Massachusetts, Mrs. Glaude lost control of the automobile and was involved in a single-car accident. The injuries sustained resulted in Mrs. Glaude's death. In addition, the accident has left the plaintiff permanently incapacitated, as he has suffered traumatic brain injury, respiratory failure, and behavioral, memory, and speech impediments. As a result of his injuries, Glaude has incurred medical bills in excess of $500,000.

At the time of the accident, the automobile involved was owned by Glaude's wife and insured under a policy issued by Continental Insurance Company ("Continental"); both Glaude and his wife were named insureds on that policy. The Continental policy provided, *inter alia:* liability coverage up to $100,000; medical payments coverage up to $2,500; and uninsured/underinsured motorist coverage up to $100,000. Continental has paid Glaude to the limits of the medical payments and uninsured/underinsured motorist coverages provided by its policy.

This dispute concerns a second automobile insurance policy that was in effect at the time of the accident. At that time, Glaude was employed as a sales representative by ICI Autocolor, a subsidiary of ICI American Holdings, Inc. Glaude had been furnished a company car insured under a policy issued by

Royal, which provided, *inter alia*, uninsured motorist coverage up to $75,000 per accident.[1] Royal has denied Glaude's request for uninsured motorist coverage for the accident of January 29, 1995, on the basis of an "owned but not insured" exclusion to the uninsured motorist coverage of the policy.

After his request for payment was denied, Glaude, through his guardian, filed the present action in Providence County Superior Court, seeking a declaration that the Royal policy provides uninsured motorist coverage with respect to the accident. Specifically, Glaude contends that the Court should deem inoperative the "owned but not insured" exclusion, in that such an exclusion violates the public policy underlying Rhode Island's uninsured motorist statute, R.I.Gen. Laws § 27–7–2.1. Royal removed the case to this Court pursuant to 28 U.S.C. § 1441(a).

At a pretrial conference, the parties agreed that the only questions that need to be resolved in this matter are questions of law, and therefore agreed to submit cross motions for summary judgment. After hearing oral arguments on the cross motions, the Court took the matter under advisement. The case is now in order for decision.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *See Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). When deciding cross motions for summary judgment, the Court must consider each motion separately, drawing inferences against each movant in turn. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st

Cir.1996). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *Id.*

## III. Discussion

The parties agree that Rhode Island law governs the present action, which was removed to this Court on the basis of diversity of citizenship. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Thus, the Court will interpret the terms of the insurance policy according to the principles established for the construction of contracts generally. *Ferreira v. Travelers Ins. Co.*, 684 F.Supp. 1150, 1154 (D.R.I.1988). The Court will examine the policy in its entirety to determine the intent of the parties, and will give effect to that intent whenever possible. *Johnson v. Western Nat'l Life Ins. Co.*, 641 A.2d 47, 48 (R.I.1994). If the terms are ambiguous, the contract will be strictly construed against the drafter. *Amica Mut. Ins. Co. v. Streicker*, 583 A.2d 550, 552 (R.I.1990). However, the Court will not stretch its imagination to read ambiguity into a policy where none is present; if the terms are clear and unambiguous, they will be applied as written and the parties will be bound by them. *Mullins v. Federal Dairy Co.*, 568 A.2d 759, 762 (R.I.1990).

### A. The Applicable Provisions of the Royal Policy

■ As an initial matter, it appears that the parties have focused the weight of their arguments on the wrong clause in the Royal insurance policy. The parties have fixed their attention on an "owned but not insured" exclusion found in the main text of the uninsured motorist coverage provision (Endorsement # 97), which reads as follows:

C. EXCLUSIONS

This insurance does not apply to any of the following:

. . . .

4. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle owned by you or any "family member" that is not a covered "auto".

1. The Royal policy defines an "uninsured motor- ist" to include an underinsured motorist.

At first glance, this exclusion appears to apply squarely to the facts of this case: Glaude sustained his injuries while a passenger in his wife's automobile, a vehicle that was not insured under the Royal insurance policy.[2]

However, a closer reading of the policy suggests that exclusion C.4 is inapplicable to this case. While in some instances "bodily injury sustained by *you*" could include the injuries sustained by *Glaude,* this is not such a case; "you" is a defined term in the policy, and Glaude does not come within that definition under these facts. The header of the "Business Auto Coverage Form" reads as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.

Glaude was not a Named Insured at the time of the accident. While the Declarations list only ICI American Holdings as a Named Insured, an endorsement broadens the range of Named Insureds to include employees in some instances. However, employees are considered Named Insureds "only whilst acting in the employee's capacity as such."[3] As Glaude has not presented any evidence from which it could be inferred that he was acting as an employee of ICI at the time of the accident, he cannot be regarded as a Named Insured at that time. Therefore, exclusion C.4 to the uninsured motorist coverage is inapplicable to this case.

Nonetheless, the parties' arguments concerning this "owned but not insured" exclusion merit the Court's attention because there is a similar exclusion that appears in another section of the uninsured motorist coverage—an exclusion that *is* directly applicable to the facts of this case. Under the Royal policy, uninsured motorist coverage extends to the following parties:

## B. WHO IS AN INSURED

1. You.

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". Any "auto" that is owned by you, or, if you are an individual, owned by any "family member", is not a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

While Glaude does not qualify as an insured under any of these categories,[4] a further policy endorsement modifies the "Who Is An Insured" clause of the uninsured motorist coverage in a manner that speaks directly to the facts here. Endorsement # 192 ("Drive Other Car Coverage—Broadened Coverage for Named Individuals") extends certain coverages to "employees furnished Company owned or leased vehicles" for travel in non-company vehicles. As Glaude had been furnished a company car, any extended coverage under this endorsement applies to him. This endorsement modifies the uninsured motorist coverage as follows:

## C. CHANGES IN AUTO MEDICAL PAYMENTS AND UNINSURED AND UNDERINSURED MOTORIST COVERAGES

---

**2.** Glaude contests this point, maintaining that his wife's car was a "covered auto" under the Royal policy. Glaude's argument is unavailing, however, as it is based on a misreading of the policy. While the "Schedule of Coverages" (Item 2) does indicate that the policy's uninsured motorist coverage extends to "any" auto, the reference is to any of the automobiles listed in the policy as "Covered Autos" (Item 3)—not to any vehicle on the road. Glaude's reading of the policy would lead to the nonsensical result that any automobile in Rhode Island would be a "covered auto" under the Royal policy.

**3.** The "Named Insured Summary" endorsement lists the persons and entities that are considered Named Insureds of the policy. Clause 2(a) of this endorsement provides that the Named Insured includes "[a]ny employee of the Named Insured but only whilst acting in the employee's capacity as such."

**4.** As was noted above, "you" refers to the Named Insured (and not to Glaude), and Glaude was not occupying a covered auto at the time of the accident. Thus, clauses B.1 and B.3 do not bring Glaude within the uninsured motorist coverage of the policy.

The following is added to WHO IS AN INSURED:

Any individual named in the Schedule [5] and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member."

The above modification is the operative clause in this dispute. By its terms, however, the exclusion denies uninsured motorist coverage to Glaude for the injuries sustained while riding as a passenger in his wife's automobile. As the Court would expect Glaude to raise the same public policy challenges to this clause as he has raised concerning exclusion C.4,[6] the Court will now consider whether this exclusion from uninsured motorist coverage violates the public policy underlying the statute.

### B. The Rhode Island Uninsured Motorist Statute

■ The uninsured motorist statute, R.I.Gen.Laws § 27–7–2.1, reads as follows, in relevant part:

No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage, bodily injury, sickness or disease, including death, resulting therefrom....

As the Rhode Island Supreme Court has noted, the statute affords protection "to the named insured against economic loss resulting from injuries sustained by reason of the negligent operation of an uninsured vehicle." *Rueschemeyer v. Liberty Mut. Ins. Co.*, 673 A.2d 448, 450 (R.I.1996). "This statute was premised on the concept that responsible motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor." *Streicker*, 583 A.2d at 553. Coverage exclusions or limitations in an insurance policy that defeat this legislative intent are void as a matter of public policy. *See Rueschemeyer*, 673 A.2d at 451; *Sentry Ins. Co. v. Castillo*, 574 A.2d 138, 140 (R.I.1990).

The issue presented for decision is a familiar one to this Court. In *Casco Indem. Co. v. Rhode Island Interlocal Risk Management Trust*, 929 F.Supp. 65 (D.R.I.1996), the Court engaged in an extensive review of the various Rhode Island Supreme Court decisions addressing the question of whether a particular exclusion from uninsured motorist coverage violates public policy. *See id.* at 70–72. The Court summarized the line of decisions as follows:

The Rhode Island Supreme Court has created a fundamental distinction between insurance policy exclusions that restrict the class of insureds covered by the policy, and exclusions that narrow the coverage afforded to the named insured under the policy. The former have been allowed, while the latter have generally been found to violate the public policy expressed in the uninsured motorist statute.

*Id.* at 71. Thus, where the policy in *Casco* provided uninsured motorist coverage for employees under most circumstances, excluding from coverage those employees with injuries arising out of the course of employment was an acceptable restriction of the class of insureds; for this reason, the exclusion did not violate public policy. *Id.* at 72.

---

5. The Schedule named "Executive Officers, Directors, or Employees furnished Company owned or leased vehicles," and thus Glaude qualified for this coverage.

6. Indeed, in his request for a declaratory judgment Glaude asked the Court to invalidate not only exclusion C.4, but also any "similar exclusions in any endorsement of the policy." The coverage limitation found in the "drive other car" provision is clearly encompassed by this request.

The exclusion at issue in this case presents a similar restriction of the class of insureds, as here the class is defined to exclude an employee occupying a vehicle owned by the employee or a family member of the employee. Since the provision only defines the class of insureds, without in any way limiting the coverage afforded to those who are insured, public policy is not offended.[7] As the Rhode Island Supreme Court has stated, "the designation of what persons are insured for purposes of [the uninsured motorist] statute is left to the terms of the particular insurance policy." *Malo v. Aetna Casualty and Sur. Co.*, 459 A.2d 954, 956–57 (R.I.1983).

A recent Supreme Court decision offers further support for this outcome. In *Dellagrotta v. Liberty Mut. Ins. Co.*, 639 A.2d 980 (R.I.1994), the Court squarely held that an "owned but not insured" exclusion did not violate the public policy underlying the uninsured motorist statute, noting that the statute "does not mandate the extension of uninsured motorist coverage to vehicles owned by policyholders but not insured by them." *Id.* at 980; *see also Employers' Fire Ins. Co. v. Baker*, 119 R.I. 734, 383 A.2d 1005, 1008–09 (1978) (rejecting a public policy challenge to a similar exclusion). As the relevant exclusion in the Royal policy is essentially the same as that reviewed in *Dellagrotta*,[8] that decision controls the Court's determination in this case.[9]

## IV. Conclusion

For the foregoing reasons, Glaude's motion for summary judgment is denied, and Royal's motion for summary judgment is granted. The Clerk will enter judgment for Royal forthwith, declaring that its policy does not afford uninsured motorist coverage to Glaude for the accident of January 29, 1995.

It is so ordered.

---

7. Examples of unacceptable limitations of *coverage* (as opposed to restrictions of the *class* of insureds) include clauses that limit recovery so that an insured is left uncompensated for part of his actual loss, *see Poulos v. Aetna Casualty & Sur. Co.*, 119 R.I. 409, 379 A.2d 362, 364–65 (1977), and those that deny coverage to an insured based on a policy's limited definition of an "uninsured motorist," *see Rueschemeyer*, 673 A.2d at 451 (policy excluded government-owned vehicles from definition of "uninsured motorist"); *Castillo*, 574 A.2d at 140–42 (snowmobiles excluded from definition of "uninsured vehicle").

8. The exclusion in *Dellagrotta* provided, in pertinent part,

> We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:
> 1. While **occupying**, or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy.

*Id.* at 980 (emphasis in original to indicate terms defined in the policy).

9. The Court notes that the clause on which the parties had originally focused their arguments, exclusion C.4, is also indistinguishable from, and thus controlled by, *Dellagrotta*.